UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-cr-20410-LENARD/Turnoff

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TREMAINE EDWARD KALE, *et al.*,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the undersigned upon Defendant Tremaine Edward Kale's Motion to Suppress Evidence. **[DE 286]**. This matter was referred to the undersigned by the Honorable Joan A. Lenard, United States District Judge for the Southern District of Florida. **[DE 289]**. A hearing on this motion was held on October 12, 2010. **[DE 391]**. The Court has considered the written and oral arguments included in the Motion to Suppress Evidence **[DE 286]**, the Government's Omnibus Response **[DE 379]**, Defendant Kale's Supplement **[DE 396]**, and the Government's Supplemental Response **[DE 397]**, as well as the testimonial and record evidence, the court file, the applicable law, and is otherwise duly advised in the premises.

Defendant moved to suppress all evidence seized by police from his vehicle on October 6, 2009, and December 16, 2009. Defendant argued that both stops were without a warrant, illegal, and unsupported by probable cause and that the resulting searches were also unreasonable and illegal.

CASE NO.: 10-cr-20410-LENARD/Turnoff

I.    **Findings of Fact**

    A.    **October 6, 2009**

Officer Jeff D'Agostinis and Detective Derek Rodriguez, both of the Miami Gardens Police Department, as well as Federal Bureau of Investigations Special Agent Lionel S. Lofton, Jr., testified at the hearing.

On October 6, 2009, Det. Rodriguez, along with Det. Carlos Velez and Agent Lofton, stopped Defendant as he was driving a black Cadillac. Det. Rodriguez turned on his police lights and siren upon noticing that the vehicle had dark tints and an expired registration. Det. Rodriguez was familiar with the vehicle and Defendant through previous encounters. Defendant, who was near his home, pulled into his driveway where he stopped the vehicle. Defendant stepped out of the vehicle and approached the police vehicle in a confrontational manner. Det. Rodriguez instructed Defendant to return to his vehicle. Defendant then attempted to give his keys to somebody who was at the residence, but Det. Rodriguez stopped him and explained why Defendant was being stopped. According to Det. Rodriguez, he advised Defendant that he was going to call a K9 unit and Defendant told him to "do what he wanted to do."

Officer D'Agostinis, a K9 officer with the City of Miami Gardens Police Department, testified that he responded to a call from Det. Rodriguez for a narcotic sniff search of a vehicle with his dog, Rocco, within five to ten minutes. When the canine arrived, Det. Rodriguez testified that he was writing the citations. The canine performed a sniff search of the vehicle and alerted to the driver's side door and trunk area. Off. D'Agostinis then conducted a search of the vehicle which yielded a small baggy of suspected cocaine and marijuana residue on an ashtray. The search also

yielded a shotgun shell that was visible from the rear driver's side floorboard and a 9mm round that was in the glove box. Nothing was found in the trunk.[1] Defendant was placed under arrest and his vehicle was impounded.

### B.     December 16, 2009

Det. Velez testified at the hearing.

On December 16, 2009, Det. Velez and Det. Rodriguez stopped Defendant in a black Cadillac with an expired registration. As Det. Velez approached Defendant's vehicle, he could see that Defendant was leaning over on his left side, but he could not determine what Defendant was doing. Det. Velez instructed Defendant to sit up. When Defendant did not comply, Det. Velez opened the driver's side door and observed a bag of marijuana. Det. Velez asked Defendant to step out of the vehicle. As Defendant exited the vehicle, Det. Velez observed a couple of shotgun shells on the driver's side floorboard. Det. Velez issued Defendant a ticket for the expired registration and a promise to appear for the possession of marijuana.

## II.    Discussion

The Fourth Amendment protects individuals from unreasonable searches and seizures. The touchstone of the Fourth Amendment is reasonableness. Pennsylvania v. Mimms, 434 U.S. 106, 108-09, 98 S. Ct. 330, 332-33, 54 L.Ed.2d 331 (1977) (*per curiam*); *see also*, United States v. Purcell, 236 F.3d 1274, 1277-78 (11th Cir. 2001) (internal citations omitted). "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or

---

[1]Although the dog had alerted to the trunk, nothing was found in it. Off. D'Agostinis testified that Rocco alerts to the odor of narcotics. If narcotics were in a particular location and were removed, there could still be lingering odors that would cause the dog to alert.

CASE NO.: 10-cr-20410-LENARD/Turnoff

seizure itself." United States v. Montoya de Hernandez, 473 U.S. 531, 537, 105 S. Ct. 3304, 3308, 87 L.Ed.2d 381 (1985) (citations omitted).

### A.     October 6, 2009 and December 16, 2009 Traffic Stops

First, Defendant argued that neither stop was justified because there was no reasonable suspicion to believe that Defendant was engaged in criminal activity on either occasion. A traffic stop is a limited form of seizure within the meaning of the Fourth Amendment analogous to an investigative detention. Purcell, 236 F.3d at 1277. Its legality is governed by Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968). Id. Under Terry, an officer's actions during a traffic stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20, 88 S. Ct. at 1879. Stops initiated on the basis of probable cause to believe a traffic violation occurred are reasonable. United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999); *see also*, United States v. Harris, 526 F.3d 1334, 1338 (11th Cir. 2008) (holding officer had probable cause to stop a taxicab because he observed the cab fail to signal during a lane change). The Supreme Court has held that, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003) ("a traffic stop is a constitutional detention if it is justified by reasonable suspicion under Terry or probable cause to believe a traffic violation has occurred under Whren . . ."). An officer's motive will not invalidate an objectively justifiable stop under the Fourth Amendment. Simmons, 172 F.3d at 778.

Here, the officers had probable cause to believe that traffic violations occurred on both

CASE NO.: 10-cr-20410-LENARD/Turnoff

occasions because Defendant's vehicle displayed an expired registration and excessively dark tints on the windows. Thus, under Whren, the undersigned finds that both stops were justified because the officers had probable cause to believe a traffic violation had occurred each time.

**B.     October 6, 2009**

As to the duration of the October 6, 2009 stop, a Terry stop must not last longer than necessary to effectuate the purposes for the stop. Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L.Ed.2d 229 (1983). During a routine stop, an officer is entitled to request a driver's license and vehicle registration, run a computer check for outstanding warrants, issue a citation, and request consent to search the vehicle. United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir. 1999); Simmons, 172 F.3d at 778. In this case, Defendant acknowledged that when a dog arrives within the time testified to at the hearing and the traffic stop is not extended, no constitutional violation has occurred. Illinois v. Caballes, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). The K9 unit responded within 5 to 10 minutes. From the time he called the K9 unit until it arrived, Det. Rodriguez was running Defendant's driver's license and vehicle tag and writing the citations. As such, the undersigned finds that the length of the stop was not excessive.

**1.     Consent Search**

Defendant argued that the search of his vehicle was conducted without a warrant, without consent, and without probable cause. The Government argued that Defendant provided consent to search his vehicle, based upon his alleged statement to Det. Rodriguez that he could "do whatever he wanted" when he was told that a K9 unit was being summoned. Defendant argued that his keys were taken away from him so he had no choice with respect to the K9 search.

"It is well-settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable...subject only to a few specifically established and well-delineated exceptions.'" Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973) (quoting Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)). One of those exceptions is a search conducted pursuant to voluntary consent. United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989). "In order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." Id. The burden is on the Government to prove that the consent was voluntary. United States v. Tovar-Rico, 61 F.3d 1529, 1536 (11th Cir. 1995). Voluntariness is a question of fact to be determined in light of the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544, 557, 100 S. Ct. 1870, 1879 (1980); Schneckloth, 412 U.S. at 248-49, 93 S. Ct. at 2059.

Defendant's previous encounters with these officers and his confrontational approach to the police vehicle, together with his statement to the officer to "do what he wanted to do," are not consistent with an atmosphere of coercion. The only argument advanced by Defendant is that the officer prevented him from giving his car keys to a third party. That action alone, which was justified under the circumstances, is not indicative of coercion. There was nothing in the record to support a finding that Defendant was coerced into allowing a search of his vehicle. Thus, the undersigned finds that Defendant's consent to search his vehicle on October 6, 2009 was voluntary.

**2.    K9 Alert**

Citing Illinois v. Caballes, 543 U.S. 405, 125 S. Ct. 834, the Government argued that, once a canine alerts on a vehicle, the officers have probable cause to search the vehicle. In Caballes, the

CASE NO.: 10-cr-20410-LENARD/Turnoff

defendant was stopped for a civil traffic infraction during which a K9 unit arrived and conducted an exterior sniff search of the vehicle. Id. at 406, 125 S. Ct. at 836. Following the positive alert to the trunk of the vehicle, the Court found that the officers had probable cause to search the trunk. Id. The Supreme Court held that, where a lawful traffic stop was not extended beyond the time necessary to issue a citation and conduct ordinary inquiries incident to the stop, the arrival and use of a narcotics-detection canine to sniff around the exterior of the vehicle did not result in an infringement on Fourth Amendment rights, such as would have to be supported by some reasonable, articulable suspicion. Id. at 409-10, 125 S. Ct. at 838.

Here, as stated *supra*, the stop was not extended beyond the time necessary to conduct reasonable inquiries incident thereto. The K9 unit arrived and performed a sniff on the exterior of Defendant's vehicle while he was lawfully stopped for traffic violations. The dog alerted to the driver's side door and the trunk. United States v. Nelson, 309 Fed. App'x 373, 375 (11th Cir. 2009) (*per curiam*) ("In the case of dog sniffs, 'probable cause arises when a drug-trained canine alerts to drugs.'") (citing United States v. Banks, 3 F.3d 399, 402 (11th Cir. 1993) (collecting cases)). Once the K9 alerted to the vehicle, the officers had probable cause to conduct a search of the vehicle. United States v. Glinton, 154 F.3d 1245, 1257 (11th Cir. 1998); Banks, 3 F.3d at 402.

### 3. Search Incident to Lawful Arrest

Another exception to the warrant requirement is a search conducted incident to a lawful arrest. United States v. Robinson, 414 U.S. 218, 224, 94 S. Ct. 467, 471, 38 L.Ed.2d 427 (1973). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was

CASE NO.: 10-cr-20410-LENARD/Turnoff

committing a crime." United States v. Gonzalez, 969 F.2d 999, 1002 (11th Cir. 1992)). Moreover, "[a] search incident to arrest is always allowed of the suspect's person and the immediate area from which the suspect can grab a weapon or destroy evidence." United States v. Standridge, 810 F.2d 1034, 1037 (11th Cir. 1987) (citations omitted).

Here, the officers had probable cause to arrest Defendant upon the discovery of drugs by the K9 in his vehicle. Therefore, a search of the vehicle was permitted incident to his arrest and any evidence derived therefrom need not be suppressed.

## II.     December 16, 2009

### A.     Plain View Doctrine

Defendant argued that, on December 16, 2009, Det. Velez was not justified in opening the vehicle door. Thus, the bag of marijuana was not observed in plain view. The Government argued that the seizure of the marijuana was permissible under the plain view doctrine.

When law enforcement officers perform Terry stops, they are "authorized to take such steps as [a]re reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." United States v. Hensley, 469 U.S. 221, 235, 105 S. Ct. 675, 683-84, 83 L.Ed.2d 604 (1985). Police may take reasonable action, considering the circumstances, to protect themselves during these investigative stops. United States v. Kapperman, 764 F.2d 786, 790 n. 4 (11th Cir.1985); see United States v. Roper, 702 F.2d 984, 988 (11th Cir.1983). In Terry, the Supreme Court explained:

> Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to

CASE NO.: 10-cr-20410-LENARD/Turnoff

believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

Terry, 392 U.S. at 27, 88 S. Ct. at 1883 (citations and footnote omitted).

Here, the officers had stopped Defendant for an expired registration and excessively dark window tints. As he approached the vehicle, Det. Rodriguez observed Defendant leaning over to the left but could not see what Defendant was doing. Despite Det. Rodriguez' request for Defendant to sit up, Defendant continued to be bent over. Det. Rodriguez testified that, at that point, he was concerned for his safety because he did not know whether Defendant was reaching for a weapon. The undersigned finds that Det. Rodriguez' actions in opening the driver's side door constituted a limited search for the purpose of ensuring officer safety.

Upon opening the door, Det. Rodriguez observed marijuana in plain view. Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S. Ct. 2130, 2136-37, 124 L.Ed.2d 334 (1993). Officers are "entitled to seize evidence revealed in plain view in the course of the lawful stop" and to arrest passengers of a motor vehicle "when evidence discovered in plain view [gives] probable cause to believe the passenger[s] ha[ve] committed a crime ...." Hensley, 469 U.S. at 235, 105 S. Ct. at 684 (citation omitted). Because he was justified in opening the vehicle door, the drugs observed in plain view need not be suppressed.

### B. Search Incident to Lawful Arrest

Finally, for the reasons discussed *supra*, the ammunition found on December 16, 2009 does not need to be suppressed, because it resulted from a search incident to Defendant's lawful arrest for possession of marijuana.

### III. Conclusion

In light of the foregoing, the undersigned finds that the officers had probable cause to stop Defendant on both occasions based upon traffic infractions. The officers were justified in searching Defendant's vehicle on October 6, 2009 based upon his consent, the K9's alert to the vehicle, and incident to Defendant's lawful arrest. On December 16, 2009, the officer was justified in opening the driver's side door, in seizing narcotics observed in plain view, and in searching Defendant's vehicle incident to his lawful arrest. Because the undersigned finds that neither of the encounters constituted an illegal seizure, then the subsequent searches of the vehicle being driven by Defendant and the seizures of evidence incident thereto should not be suppressed.

### Recommendation

Accordingly, it is hereby **RECOMMENDED** that Defendant Tremaine Edward Kale's Motion to Suppress Evidence **[DE 286]** be **DENIED**.

Pursuant to 28 U.S.C. §636(b)(1)(c), the parties may file written objections to this Report and Recommendation with the Honorable Joan A. Lenard, United States District Judge, within fourteen (14) days of receipt. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988).

CASE NO.: 10-cr-20410-LENARD/Turnoff

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, this 25 day of February 2011.

_____
**WILLIAM C. TURNOFF**
**United States Magistrate Judge**

cc:   Hon. Joan A. Lenard
      All counsel of record